*CLOSE*

BRIAN G. DONOHUE
Senior Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
(202) 514-5413

PETER O'MALLEY
Assistant United States Attorney
United States Attorney's Office
970 Broad Street, 7th Floor
Newark, New Jersey 07102
(973) 645-2920

SCOTT B. DUBIN
Deputy Attorney General
NJ Dept. of Law & Public Safety, Div. of Law
25 Market Street, P.O. Box 093
Trenton, NJ 08625-0093
(609) 633-8713

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| and ) | |
| ) | |
| STATE OF NEW JERSEY, ) | |
| DEPARTMENT OF ENVIRONMENTAL ) | |
| PROTECTION, ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 12-4328(SSH) |
| ) | |
| CHEVRON U.S.A. INC., ) | **CONSENT DECREE** |
| ) | |
| and ) | |
| ) | |
| CHEVRON U.S.A. INC. d/b/a ) | |
| CHEVRON PRODUCTS COMPANY, ) | |
| ) | |
| Defendants. ) | |

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | JURISDICTION AND VENUE | 3 |
| II. | APPLICABILITY | 4 |
| III. | DEFINITIONS | 5 |
| IV. | CIVIL PENALTY | 8 |
| V. | COMPLIANCE REQUIREMENTS | 9 |
| VI. | REPORTING REQUIREMENTS | 11 |
| VII. | STIPULATED PENALTIES | 13 |
| VIII. | FORCE MAJEURE | 19 |
| IX. | DISPUTE RESOLUTION | 22 |
| X. | INFORMATION COLLECTION AND RETENTION | 24 |
| XI. | EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS | 26 |
| XII. | COSTS | 28 |
| XIII. | NOTICES | 28 |
| XIV. | EFFECTIVE DATE | 30 |
| XV. | RETENTION OF JURISDICTION | 30 |
| XVI. | MODIFICATION | 30 |
| XVII. | TERMINATION | 30 |
| XVIII. | PUBLIC PARTICIPATION | 32 |
| XIX. | SIGNATORIES/SERVICE | 32 |
| XX. | INTEGRATION | 33 |
| XXI. | FINAL JUDGMENT | 33 |

Whereas, Plaintiffs United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the State of New Jersey ("New Jersey"), on behalf of the New Jersey Department of Environmental Protection ("NJDEP"), have filed a joint complaint in this action concurrently with the lodging of this Consent Decree against the Defendants Chevron U.S.A. Inc. and Chevron U.S.A. Inc. d/b/a Chevron Products Company (the "Defendants" or "Chevron");

Whereas, in the Complaint, the United States alleges that the Defendants violated the Clean Air Act, 42 U.S.C § 7401, et seq. (the "Act"), and its underlying regulations set forth at 40 C.F.R. Part 63, Subparts A, H and CC, pertaining to leak detection and repair ("LDAR") requirements for hazardous air pollutants at Chevron's petroleum refinery asphalt plant ("Facility") in Perth Amboy, New Jersey, and conditions in Defendants' Title V operating permit;

Whereas, in the Complaint, New Jersey alleges that the Defendants also violated the Act and its underlying regulations at its Perth Amboy, New Jersey, asphalt refining Facility, and the New Jersey Air Pollution Control Act, N.J.S.A. 26:2C-1, et seq., and its underlying regulations at N.J.A.C. 7:27-1, et seq., particularly at N.J.A.C 7:27-16.1, et seq. (Volatile Organic Compounds), and N.J.A.C. 7:27-22.1, et seq. (Operating Permits), including, inter alia, that Chevron failed to comply with conditions in its Title V operating permit;

Whereas, NJDEP  issued to Chevron two Administrative Orders and Notices of Civil Administrative Penalty Assessments ("AO/COCAPAs"), to wit: 1) AO/NOCAPA No. 070002-18058, based on compliance evaluations.in 2005, alleging that Chevron not only failed to fulfill all conditions and provisions of its Title V operating permit, but also alleging other violations by Chevron, including failure to keep records of leaks, flow rate to flares, inspections, and visible

flare emissions, and installing equipment without first obtaining an operating permit, in violation

of the New Jersey Air Act and N.J.A.C. 7:27-22-1, et seq., and 7:27-16-1, et seq., and 40 C.F.R.

63.654(d); and, 2) AO/NOCAPA No. 090005-18058, based on evaluations of six month

deviation reports for 2006, 2007, and 2008, not only alleging that Chevron failed to fulfill all

conditions and provisions of its Title V operating permit BOP060001, BOP070001, and

BOP080001 during 2006, 2007, and 2008, but also alleging other violations by Chevron of

N.J.A.C. 7:27-16-1, et seq., 7:27-22-1, et seq., and 40 C.F.R. 63.181 and 63.654(d);

   Whereas, Chevron submitted requests to NJDEP for administrative hearings to contest

the above-referenced two AO/NOCAPAs, but with the consent of Chevron, NJDEP did not refer

the request to the New Jersey Office of Administrative Law pending resolution of settlement

discussions which has resulted in this Consent Decree;

   Whereas, NJDEP and Chevron intend to resolve the two AO/NOCAPAs through this

Consent Decree;

   Whereas, at the time of the lodging of this Consent Decree, Chevron asserts that the

Crude Unit at its Perth Amboy, New Jersey, asphalt refining Facility is not in operation, although

the Facility continues to operate on a limited basis as a terminal, which includes the use of

storage tanks;

   Whereas, Chevron continues to maintain its Title V operating permit for the Facility;

   Whereas, the Defendants do not admit any liability to the United States or New Jersey

arising out of the transactions or occurrences alleged in the Complaint; and,

   Whereas, the Parties hereto recognize, and the Court by entering this Consent Decree

finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid

litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§1331, 1345, and 1355, Section 113(b) of the Act, 42 U.S.C. § 7413(b), and supplemental jurisdiction over New Jersey's claims pursuant to 28 U.S.C. § 1367. This Court also has jurisdiction over the Parties. Venue lies in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c), and 1395(a), because the Defendants are found and conduct business in this District and/or because the violations in the Complaint are alleged to have occurred in this District. For purposes of this Decree, or any action to enforce this Decree, the Defendants consent to the Court's jurisdiction over this Decree and any such action and over the Defendants, and the Defendants consent to venue in this judicial district.

2.      For purposes of this Consent Decree, the Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Sections 113 and 114 of the Act, 42 U.S.C. §§ 7413 and 7414, and the regulations promulgated thereunder; and pursuant to the New Jersey Air Act, N.J.S.A. 26:2C-19 and the regulations promulgated thereunder.

## II. APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States and New Jersey, and upon the Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligation to ensure that the terms of this Decree are implemented, unless (1) the transferee agrees to undertake the obligations required by Section V of this Decree and to be substituted for the Defendants as Parties under the Decree and thus be bound by the terms thereof, and (2) the United States consents to relieve Defendant of its obligations, as to which such consent shall not be unreasonably withheld. At least 30 Days prior to such transfer, the Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer to EPA Region 2, the United States Attorney for the District of New Jersey, the United States Department of Justice, and New Jersey, in accordance with Section XIV of this Decree (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      The Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. The Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.     In any action to enforce this Consent Decree, the Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III. DEFINITIONS

7.     Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "CAP" shall mean the Corrective Action Plan described in Appendix A to this Consent Decree;

b.     "Certified Low-Leaking Valves" shall mean valves for which a manufacturer has issued either: (i) a written warranty that the valve will not leak above 100 parts per million ("ppm") for three to five years (depending on the manufacturer's offer); or (ii) a written warranty, certification or equivalent documentation that the valve has been tested pursuant to generally-accepted good engineering practices and has been found to be leaking at no greater than 100 ppm;

c.     "Certified Low-Leaking Valve Packing Technology "shall mean valve packing technology for which a manufacturer has issued either: (i) a written warranty that the valve packing technology will not leak above 100 ppm for three to five years (depending on the manufacturer's offer; or (ii) a written warranty, certification or equivalent documentation that the valve packing technology has been tested pursuant to generally-accepted good engineering practices and has been found to be leaking at no greater than 100 ppm;

d.      "Complaint" shall mean the joint complaint filed by the United States and New Jersey in this action;

e.      "Consent Decree" or "Decree" shall mean this Decree, including Appendix A;

f.      "Covered Equipment" shall mean all Covered Types of Equipment in all Covered Process Units and/or in relation to the Terminal;

g.      "Covered Process Units" shall mean the asphalt refining crude unit(s) at the Facility as well as Terminal equipment;

h.      "Covered Types of Equipment" shall mean all valves, pumps, and OELs in light liquid, heavy liquid, or gas/vapor service (as those terms are defined in the applicable regulations) that are regulated under a federal, state, or local leak detection and repair program, and all Terminal equipment;

i.      "Crude Unit(s)" shall mean that unit or units used in the asphalt refining process at the Facility;

j.      "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

k.      "Defendants" shall mean Chevron U.S.A. Inc. and Chevron U.S.A. Inc. d/b/a Chevron Products Company;

l.      "DOR" shall mean Delay of Repair;

m.      "ELP" shall mean the Enhanced Leak Detection and Repair Program specified in Appendix A to this Decree;

n.     "EPA" shall mean the United States Environmental Protection Agency and any of
its successor departments or agencies;

o.     "Effective Date" shall have the definition provided in Section XIV;

p.     "Facility" shall mean Defendants' Perth Amboy, New Jersey, asphalt refinery
located 1200 State Street, Perth Amboy, New Jersey;

q.     "First Maintenance Shutdown" shall mean the first shutdown of a Covered
Process Unit that occurs no sooner than eighteen months after the Date of Lodging of this
Consent Decree;

r.     "LDAR" shall mean Leak Detection and Repair;

s.     "LDAR Audit Commencement Date" or "Commencement of an LDAR Audit"
shall mean the first day of the on-site inspection that accompanies an LDAR audit;

t.     "LDAR Audit Completion Date" or "Completion of an LDAR Audit" shall mean
120 days after the LDAR Audit Commencement Date;

u.     "Maintenance Shutdown" shall mean a shutdown of a Covered Process Unit that
is done for the purpose of scheduled maintenance;

v.     "Method 21" shall mean the test method found at 40 C.F.R. Part 60, Appendix A,
Method 21;

w.     "OEL" or "Open-Ended Line" shall mean any valve, except pressure relief valves,
having one side or the valve seat in contact with process fluid and one side open to atmosphere,
either directly or through open piping;

x.     "OELCD" shall mean an open-ended valve or line at the closure device;

y.     "Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

z.     "Parties" shall mean the United States, New Jersey, and the Defendants;

aa.    "Repair Verification Monitoring" shall mean the utilization of monitoring (or other method that indicates the relative size of the leak) within 24 hours after each attempt at repair of a leaking piece of equipment in order to ensure that the leak has been eliminated or is below the applicable leak definition;

bb.    "Screening Value" shall mean the highest emission level that is recorded at each piece of equipment as it is monitored in compliance with Method 21;

cc.    "Section" shall mean a portion of this Decree identified by a roman numeral;

dd.    "State" shall mean the State of New Jersey, acting on behalf of NJDEP;

ee.    "Subsection" shall mean a portion of this Consent Decree identified by a capital letter;

ff.    "Terminal" shall mean the equipment at the Facility used for unloading and loading trucks and marine vessels, and shall include the equipment at the truck loading rack(s), dock, tanks, and any piping connected to any of this equipment;

gg.    "Uniform LDAR regulations" shall mean those enacted regulations (currently under review and consideration by EPA) that will establish uniform equipment leak definitions, monitoring frequencies and uniform requirements for reporting, recordkeeping, and repair.

hh.    "United States" shall mean the United States of America, acting on behalf of EPA.

## IV. CIVIL PENALTY

8.    Within 30 Days after the Effective Date of this Consent Decree, the Defendants shall pay the sum of $463,750.00 as a civil penalty, together with interest accruing from 30 Days of the Effective Date of this Consent Decree, at the rate specified in 28 U.S.C. §1961.

9.    The Defendants shall pay half of the civil penalty amount, $231,875, plus interest from 30 Days of the Effective Date of this Consent Decree at the rate specified in 28 U.S.C. §1961, to the United States Department of Justice by FedWire Electronic Funds Transfer ("EFT") in accordance with written instructions to be provided to Defendants, following entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for New Jersey.  At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States, et al. v. Chevron U.S.A. Inc., et al., and shall reference the civil action number and DOJ case number 90-5-2-1-09627, to the United States in accordance with Section XIII of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio  45268

10.    The Defendants shall pay half of the civil penalty amount, $231,875, plus interest from 30 Days of the Effective Date of this Consent Decree, by check payable to "Treasurer, State of New Jersey," and delivered to Director, Air and Hazardous Materials Enforcement, NJDEP, at the address listed in Paragraph 64 below.

11.    The Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal or State income tax.

## V.  COMPLIANCE REQUIREMENTS

12.    Chevron shall comply with the ELP specified in Appendix A to this Consent Decree.  The time for compliance with specific provisions of the ELP is provided therein.

13.    If Uniform LDAR regulations are promulgated after the Effective Date of this Consent Decree, such Uniform LDAR regulations shall become applicable to the Facility as specified in those regulations, in accordance with Appendix A, Subsection A.

14.    Approval of Deliverables.  After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA, after consultation with NJDEP, shall in writing:  a) approve the submission; b) approve the submission upon specified conditions; c) approve part of the submission and disapprove the remainder; or d) disapprove the submission.

15.    If the submission is approved pursuant to Paragraph 14.a., the Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraph 14.b or .c, the Defendants shall, upon written direction from EPA, after consultation with NJDEP, take all actions required by the approved plan, report, or other item that EPA, after consultation with NJDEP, determines are technically severable from any disapproved portions, subject to the Defendants' right to dispute only the specified conditions or the disapproved portions, under Section IX of this Decree (Dispute Resolution).

16.    If the submission is disapproved in whole or in part pursuant to Paragraph 14.c. or d., the Defendants shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, the Defendants shall proceed in accordance with the preceding Paragraph.

17.     Any stipulated penalties applicable to the original submission, as provided in

Section VII of this Decree, shall accrue during the 45 Day period or other specified period, but

shall not be payable unless the resubmission is untimely or is disapproved in whole or in part;

provided that, if the original submission was so deficient as to constitute a material breach of the

Defendants' obligations under this Decree, the stipulated penalties applicable to the original

submission shall be due and payable notwithstanding any subsequent resubmission.

18.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in

whole or in part, EPA, after consultation with NJDEP, may again require the Defendants to

correct any deficiencies, in accordance with the preceding Paragraphs, subject to the Defendants'

right to invoke Dispute Resolution and the right of EPA and the State to seek stipulated penalties

as provided in the preceding Paragraphs.

19.     Permits.  Where any compliance obligation under this Section requires the

Defendants to obtain a federal, state, or local permit or approval, the Defendants shall submit

timely and complete applications and take all other actions necessary to obtain all such permits

or approvals.

## VI. REPORTING REQUIREMENTS

20.     The Defendants shall submit a report to the United States and New Jersey, in

writing, providing a description of any non-compliance with the requirements of this Consent

Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be

taken, to prevent or minimize such violation within 10 working Days of the Day the Defendants

first became aware of the violation.  If the Defendants violate, or have reason to believe that they

may violate, any requirement of Appendix A to this Consent Decree, the Defendants shall notify

the United States and New Jersey in the next semi-annual report as provided in paragraph 32 of

Appendix A. Either type of report shall include an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, the Defendants shall so state in the report. The Defendants shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day the Defendants become aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves the Defendants of their obligation to provide the notice required by Section VIII of this Consent Decree (Force Majeure).

21.     Whenever any violation of this Consent Decree, may pose an immediate threat to the public health or welfare or the environment, the Defendants shall notify EPA and NJDEP orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after the Defendants first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

22.     All reports shall be submitted to the persons designated in Section XIII of this Consent Decree (Notices).

23.     Each report submitted by the Defendants under this Section shall be signed, either by hand or electronically, by an official of the submitting party and include the following certification:

> I certify under penalty of law that I have examined and am familiar
> with the information in this document and all attachments and that
> this document and its attachments were prepared either by me
> personally or under my direction or supervision in a manner
> designed to ensure that qualified and knowledgeable personnel
> properly gather, evaluate, and present the information contained
> therein. Based on my inquiry of the person or persons who
> manage the system, or those persons directly responsible for
> gathering the information, the information submitted is, to the best

of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

24.     The reporting requirements of this Consent Decree do not relieve the Defendants of any reporting obligations required by the Clean Air Act, or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

25.     Any information provided pursuant to this Consent Decree may be used by the United States or New Jersey in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII.  STIPULATED PENALTIES

26.     The Defendants shall be liable for stipulated penalties to the United States and New Jersey for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

27.     Late Payment of Civil Penalty. If the Defendant fails to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, the Defendants shall pay a stipulated penalty of $2,500 per Day for each Day that the payment is late.

28.     ELP Requirements. Stipulated penalties shall accrue for each violation of the ELP requirements, as provided in the following Table 1:

## TABLE 1

| VIOLATION | STIPULATED PENALTY | | |
|---|---|---|---|
| 28.a.  Regarding Paragraph 2 and 16 of Appendix A, the failure to timely develop a Facility-Wide LDAR Document, each failure to timely update the Document on an annual basis if needed, each failure to submit a complete list all valves in the Covered Process unit(s) and the Terminal, and the failure to timely notify the United States and NJDEP of the restart of the Crude Unit, as required therein | Period of noncompliance late<br><br>1 - 15 days<br>16 - 30 days<br>31 days or more | Penalty per day<br><br><br>$ 300<br>$ 400<br>$ 500 | |
| 28.b.  Regarding Paragraphs 3 and 4 of Appendix A, each failure to perform monitoring at the frequencies set forth therein | $100 per component per missed monitoring event, not to exceed $25,000 | | |
| 28.c.  Regarding Paragraph 5 of Appendix A, each failure to comply with Method 21 in performing LDAR monitoring, as required by paragraph 3 of Appendix A | Monitoring frequency for the component<br><br>Semi-Annual<br>Quarterly<br>Monthly | Penalty per monitoring event per process unit<br><br>$ 15,000<br>$ 10,000<br>$ 5,000 | |
| 28.d.  Regarding Paragraph 5 of Appendix A, each failure to use a monitoring device that is attached to a data logger, and each failure, during each monitoring event, to directly electronically record the Screening Value, date, time, identification number of the monitoring instrument, and the identification of technician, as required therein | $100 per failure per piece of equipment monitored | | |
| 28.e.  Regarding Paragraph 5 of Appendix A, each failure to transfer monitoring data to an electronic database on at least a weekly basis, as required therein | $150 per day for each day that the transfer is late | | |
| 28.f.  Regarding Paragraph 8 of Appendix A, each failure to timely perform a first attempt at repair, as required therein | $ 150 per day for each late day, not to exceed $1500 per leak | | |
| 28.g.  Regarding Paragraph 8 of Appendix A, each failure to timely perform a final attempt at repair, as required therein | Equipment type<br><br>Valves<br>Pumps | Penalty per component per day late<br><br>$ 100<br>$ 200 | Not to Exceed<br><br>$ 12,500<br>$ 25,000 |

| | | | |
|---|---|---|---|
| 28.h. Regarding Paragraph 9 of Appendix A, each failure to timely perform Repair Verification Monitoring, as required therein | Equipment type | Penalty per component per day late | Not to Exceed |
| | Valves | $ 100 | $ 12,500 |
| | Pumps | $ 200 | $ 20,000 |
| 28.i. Regarding Paragraph 10 of Appendix A, each failure to undertake the drill-and-tap method, as required therein | $200/day with a cap of $17,600 | | |
| 28.j. Regarding Paragraphs 10.a. and 11 of Appendix A, each failure to record the information, as required therein | $ 100 per component per item of missed information | | |
| 28.k. Regarding Paragraph 12 of Appendix A, each improper placement of a piece of Covered Equipment on the DOR list | Equipment type | Penalty per component per day late | Not to Exceed |
| | Valves | $ 100 | $ 25,000 |
| | Pumps | $ 200 | $ 50,000 |
| 28.l. Regarding Paragraph 13 of Appendix A, each failure to comply with the requirement that a relevant unit supervisor or person of similar authority sign off on placing a piece of Covered Equipment on the DOR list, as required by Paragraph 13.a.; each failure to undertake periodic monitoring, as required by paragraph 13.b.; and each failure to repair, or, with respect to valves, each exceedance of the limit for such pieces of equipment replaced with Certified Low-Leaking Valves or fitted with Certified Low-Leaking Valve packing Technology, as required by Paragraph 13.c. | $250 per piece of Covered Equipment | | |
| 28.m. Regarding Paragraph 15 of Appendix A, each failure to install a new Certified Low-Leaking Valve or Certified Low-leaking Valve Packing Technology, as required therein | $ 1,000 per valve | | |
| 28.n. Regarding Paragraph 20 of Appendix A, each failure to integrate or remove a piece of Covered Equipment from the LDAR program, as required therein | $ 150 per failure per piece of Covered Equipment | | |
| 28.o. Regarding Paragraph 21 of Appendix A, each failure to timely develop a training protocol, as required therein | $ 50 per day late | | |
| 28.p. Regarding Paragraph 21 of Appendix A, each failure to perform initial or refresher training, as required therein | $ 1000 per person per month late (not to exceed $10,000 per month) | | |

-15-

| | |
|---|---|
| 28.q.  Regarding Paragraph 22 of Appendix A, each failure to provide QA/QC certification, as required therein | $100 per missed certification per technician |
| 28.r.  Regarding Paragraph 23 of Appendix A, each failure to perform any of the requirements relating to QA/QC, as provided therein | $200 per missed requirement per quarter |
| 28.s.  Regarding Paragraphs 24 and 25 of Appendix A, each failure to conduct an LDAR audit in accordance with the schedule set forth therein | $100 (1 -15 days)/$200 (16 – 30 days)/$350 (31 days or more), not to exceed $25,000 |
| 28.t.  Regarding Paragraph 24 of Appendix A, each failure to use a third party and each use of a third party auditor that is not experienced in LDAR audits | $5,000 per audit |
| 28.u.  Regarding Paragraph 26.a. of Appendix A, each audit that does not comply with the requirements therein | $10,000 per audit |
| 28.v.  Regarding Paragraph 26.b. of Appendix A, each audit that does not comply with the requirements therein | $10,000 per audit |
| 28.w.  Regarding Paragraph 26.c. of Appendix A, each audit that does not comply with the requirements therein | $10,000 per audit |
| 28.x.  Regarding Paragraph 27 of Appendix A, each failure to perform more frequent monitoring, as required therein | $100 per component per day per missed monitoring event, not to exceed $25,000 |
| 28.y.  Regarding Paragraphs 28.a. and b. of Appendix A, each failure to timely submit a preliminary Corrective Action Plan or Final Corrective Action Plan that substantially conforms to the requirements therein | Period of noncompliance  Penalty per day per violation<br><br>1 - 15 days                        $ 100<br>16 - 30 days                     $ 250<br>31 days or more                $ 500<br><br>Not to exceed $100,000 per audit |
| 28.z.  Regarding Paragraphs 28.a. and b. of Appendix A, each failure to implement a corrective action within 90 days after the LDAR Audit Completion Date or pursuant to the schedule that the Defendants must propose pursuant to Paragraphs 28.a. and b. if the corrective action cannot be completed in 90 days or pursuant to an EPA-approved revised schedule | Period of noncompliance  Penalty per day per violation<br><br>1 - 15 days                        $ 100<br>16 - 30 days                     $ 150<br>31 days or more                $ 200<br><br>Not to exceed $40,000 per audit |

| 28.aa.  Regarding Paragraph 29 of Appendix A, each failure to timely submit a Certification of Compliance that substantially conforms to the requirements therein | Period of noncompliance | Penalty per day per violation |
|---|---|---|
| | 1 - 15 days | $ 100 |
| | 16 - 30 days | $ 250 |
| | 31 days or more | $ 500 |
| | Not to exceed $25,000 | |
| 28.bb.  Regarding Paragraphs 30-33 of Appendix A, each failure to comply with the requirements therein | Period of noncompliance | Penalty per day per violation |
| | 1 - 15 days | $ 100 |
| | 16 - 30 days | $ 250 |
| | 31 days or more | $ 500 |
| 28.cc.  Each failure to substantially comply with any recordkeeping, submission, or reporting requirements not specifically identified in this Table 1 | Period of noncompliance | Penalty per day per violation |
| | 1 - 15 days | $ 100 |
| | 16 - 30 days | $ 250 |
| | 31 days or more | $ 500 |

29.    Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting and recordkeeping requirements of this Consent Decree not otherwise provided in Appendix A:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $   750 | 1st through 14th Day |
| $ 1,500 | 15th through 30th Day |
| $ 3,000 | 61st Day and beyond |

30.    Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

31.    The Defendants shall pay any stipulated penalty within 30 Days of receiving the demand of either Plaintiff.  The Defendants shall pay 50% of the total stipulated penalty due to

-17-

the United States and 50% to New Jersey.  The Plaintiff making the demand for a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

32.     Either Plaintiff may in the unreviewable exercise of their discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

33.     Stipulated penalties shall continue to accrue as provided in Paragraph 30, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA or New Jersey, as applicable, that is not appealed to the Court, the Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States and New Jersey within 30 Days of the effective date of the agreement or the receipt of EPA's or New Jersey's decision or order.

b.     If the dispute is appealed to the Court and the United States or New Jersey prevails in whole or in part, the Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c., below.

c.     If any Party appeals the District Court's decision, the Defendants shall pay all accrued penalties determined to be owed, together with interest, within 15 Days of receiving the final appellate court decision.

34.     a. The Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

     b.     The Defendants shall pay stipulated penalties owing to New Jersey in the manner set forth in Paragraph 10, except that a transmittal letter shall be sent stating that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

35.     If the Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, the Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or New Jersey from seeking any remedy otherwise provided by law for the Defendants' failure to pay any stipulated penalties.

36.     Subject to the provisions of Section XI of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or New Jersey for the Defendants' violation of this Consent Decree or applicable law.

## VIII. FORCE MAJEURE

37.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Defendants, of any entity controlled by the Defendants, or of the Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite the Defendants' best efforts to fulfill the obligation. The requirement that the Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event: (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include the Defendants' financial inability to perform any obligation under this Consent Decree.

38.     If any event occurs or has occurred that may delay the performance of any

obligation under this Consent Decree, whether or not caused by a force majeure event, the

Defendants shall provide notice orally or by electronic or facsimile transmission within 72 hours

of when the Defendants first knew that the event might cause a delay:

To EPA:

Ken Eng, Chief
Air Compliance Branch, DECA
U.S. Environmental Protection Agency
Region 2
290 Broadway, 21st Floor
New York, New York 10007

        and

To New Jersey:

Manager
N.J. Department of Environmental Protection
Air Compliance & Enforcement
4 Station Plaza
South Clinton Avenue
Mail Code: 22-03A
P.O. Box 420
Trenton, NJ  08625-0420
609-292-3187.

Within 10 Days thereafter, the Defendants shall provide in writing to EPA and New Jersey:  an

explanation and description of the reasons for the delay; the anticipated duration of the delay; all

actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of

any measures to be taken to prevent or mitigate the delay or the effect of the delay; the

Defendants' rationale for attributing such delay to a force majeure event if it intends to assert

such a claim; and a statement as to whether, in the opinion of the Defendants, such event may

cause or contribute to an endangerment to public health, welfare or the environment.  The

-20-

Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude the Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. The Defendants shall be deemed to know of any circumstance of which the Defendants, any entity controlled by the Defendants, or the Defendants' contractors knew or should have known.

39.     If EPA, after a reasonable opportunity for review and comment by New Jersey, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by New Jersey, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify the Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

40.     If EPA, after a reasonable opportunity for review and comment by New Jersey, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Defendants in writing of its decision.

41.     If the Defendants elect to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 30 Days after receipt of EPA's notice. In any such proceeding, the Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be

warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that the Defendants complied with the requirements of Paragraphs 37 and 38, above. If the Defendants carry this burden, the delay at issue shall be deemed not to be a violation by the Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.  DISPUTE RESOLUTION

42.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. The Defendants' failure to seek resolution of a dispute under this Section shall preclude the Defendants from raising any such issue as a defense to an action by the United States or New Jersey to enforce any obligation of the Defendants arising under this Decree.

43.    Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when the Defendants send the United States and New Jersey a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States, after reasonable opportunity for review and comment by New Jersey, shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, the Defendants invoke formal dispute resolution procedures as set forth below.

44.     _Formal Dispute Resolution_.  The Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and New Jersey a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting the Defendants' position and any supporting documentation relied upon by the Defendants.

45.     The United States, after reasonable opportunity for review and comment by New Jersey, shall serve its Statement of Position within 45 Days of receipt of the Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on the Defendants, unless the Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

46.     The Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States and New Jersey, in accordance with Section XIII of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 30 Days of receipt of the Plaintiffs' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of the Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

47.     The United States, after reasonable opportunity for review and comment by New Jersey, shall respond to Defendants' motion within the time period allowed by the Local Rules of

this Court. The Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

48.     Standard of Review   In a formal dispute resolution proceeding under this Section, Defendants shall bear the burden of demonstration that their position complies with Consent Decree and the CAA and that they are entitled to relief under applicable principles of law. The United States/New Jersey reserve the right to argue that their/its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law, and the Defendants reserve the right to argue to the contrary.

49.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 33. If the Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X. INFORMATION COLLECTION AND RETENTION

50.     The United States and New Jersey, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

      a.     monitor the progress of activities required under this Consent Decree;

      b.     verify any data or information submitted to the United States or New Jersey in accordance with the terms of this Consent Decree;

-24-

        c.      obtain samples and, upon request, splits of any samples taken by the Defendants or their representatives, contractors, or consultants;

        d.      obtain documentary evidence, including photographs and similar data; and

        e.      assess the Defendants' compliance with this Consent Decree.

51.      Upon request, the Defendants shall provide EPA and NJDEP or their authorized representatives splits of any samples taken by the Defendants. Upon request, EPA and NJDEP shall provide the Defendants splits of any samples taken by EPA or NJDEP.

52.      Until 5 years after the termination of this Consent Decree, the Defendants shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to the Defendants' performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or New Jersey, the Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

53.      At the conclusion of the information-retention period provided in the preceding Paragraph, the Defendants shall notify the United States and New Jersey at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or New Jersey, the Defendants shall deliver any such documents, records, or other information to EPA or NJDEP. The Defendants may assert that certain documents, records, or other information is privileged under the attorney-

client privilege or any other privilege recognized by federal law. If the Defendants assert such a privilege, they shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by the Defendants. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

54.     The Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that the Defendants seek to protect as CBI, the Defendants shall follow the procedures set forth in 40 C.F.R. Part 2, and under the New Jersey Open Records Act, N.J.S.A. 47:1A-1 to -13, and NJDEP rules adopted under the New Jersey Air Act at N.J.A.C. 7:27-1.9 to -1.30.

55.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or New Jersey pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of the Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

56.     This Consent Decree resolves the civil claims of the United States and NJDEP for the violations alleged in the Complaint filed in this action through the date of lodging, as well as New Jersey's claims as alleged in AO/NOCAPAs PEA 070002-18058 and 090005-18058 issued by NJDEP.

57.    The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 56. This Consent Decree shall not be construed to limit the rights of the United States or New Jersey to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph

58.    The United States reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Facility. New Jersey reserves all right under the New Jersey Air Act and common law, to take additional action if New Jersey determines that such actions are necessary to protect public, safety, welfare, and the environment.

59.    In any subsequent administrative or judicial proceeding initiated by the United States or New Jersey for injunctive relief, civil penalties, other appropriate relief relating to the Facility or the Defendants' violations, the Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or New Jersey in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 56 of this Section.

60.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. The Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and the Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth

herein. The United States and New Jersey do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that the Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, or with any other provisions of federal, state, or local laws, regulations, or permits.

61.     This Consent Decree does not limit or affect the rights of the Defendants or of the United States or New Jersey against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against the Defendants, except as otherwise provided by law.

62.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.  COSTS

63.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and New Jersey shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by the Defendants.

## XIII.  NOTICES

64.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-2-1-09627

To EPA:

Ken Eng, Chief
Air Compliance Branch, DECA
U.S. Environmental Protection Agency
Region 2
290 Broadway, 21st Floor
New York, New York 10007

To New Jersey:

Edward Choromanski, Director
New Jersey Department of Environmental Protection
Air and Hazardous Materials Enforcement
401 East State Street
Mail Code 401-04B
P.O. Box 420
Trenton, NJ  08625-0420

Chief
New Jersey Department of Law and Public Safety
Division of Law
Environmental Enforcement and Homeland Security Section
25 Market Street
P.O. Box 093
Trenton, NJ  08625-0093

and an electronic copy, in .pdf format, to:

csullivan@matrixneworld.com

patel.harish@epa.gov

To Defendants:

Chief of Environmental & Safety Law Group
Chevron Law Department
Chevron Corporation
6001 Bollinger Canyon Road, Room T2264
San Ramon, CA  94583


     65.     Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

66.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV. EFFECTIVE DATE

67.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV. RETENTION OF JURISDICTION

68.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Decree.

## XVI. MODIFICATION

69.    The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

70.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX of this Decree (Dispute Resolution), provided, however, that the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII. TERMINATION

71.    a.    After payment of the civil penalty and any accrued stipulated penalties, and the latter of the Defendants having satisfactorily completed the requirements of Section V

(Compliance Requirements) of this Decree or three years from the Effective Date, the Defendants may serve upon the United States and New Jersey a Request for Termination, stating that the Defendant has satisfied those requirements, together with all necessary supporting documentation. The Defendant may seek termination of this CD after three years from the Effective Date notwithstanding whether the Crude Unit was restarted during that period.

      b.    Notwithstanding Paragraph 71.a., the requirements of Appendix A will survive termination of this Consent Decree and remain enforceable under Paragraph 12 and the provisions of Table 1 of Section VII (Stipulated Penalties) for a period of three years after restart of the Crude Unit (whether or not the Consent Decree is terminated in the interim), unless Uniform LDAR regulations are promulgated and supersede the provisions of Appendix A. In that event, the Uniform LDAR provisions shall apply without time limit (unless so provided in the regulations). For purposes of this Subparagraph 71.b., Paragraph 12 and the provisions of Table 1 of Section VII (Stipulated Penalties) shall also survive termination of this Consent Decree.

72.    Following receipt by the United States and New Jersey of the Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether the Defendants have satisfactorily complied with the requirements for termination of this Consent Decree. If the United States, after reasonable opportunity for review and comment by New Jersey, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

73.    If the United States, after reasonable opportunity for review and comment by New Jersey, does not agree that the Decree may be terminated, the Defendants may invoke Dispute

Resolution under Section IX of this Decree.  However, the Defendants shall not seek Dispute

Resolution of any dispute regarding termination under Section IX, until 30 Days after service of

its Request for Termination.

## XVIII.  PUBLIC PARTICIPATION

74.     This Consent Decree shall be lodged with the Court for a period of not less than

30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States

reserves the right to withdraw or withhold its consent if the comments regarding the Consent

Decree disclose facts or considerations indicating that the Consent Decree is inappropriate,

improper, or inadequate.  The Defendants consent to entry of this Consent Decree without further

notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to

challenge any provision of the Decree, unless the United States has notified the Defendants in

writing that it no longer supports entry of the Decree.

## XIX.  SIGNATORIES/SERVICE

75.     Each undersigned representative of the Defendants, New Jersey, and the Assistant

Attorney General for the Environment and Natural Resources Division of the Department of

Justice certifies that he or she is fully authorized to enter into the terms and conditions of this

Consent Decree and to execute and legally bind the Party he or she represents to this document.

76.     This Consent Decree may be signed in counterparts, and its validity shall not be

challenged on that basis.  The Defendants agree to accept service of process by mail with respect

to all matters arising under or relating to this Consent Decree and to waive the formal service

requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any

applicable Local Rules of this Court including, but not limited to, service of a summons.

## XX.  INTEGRATION

77.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supercedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXI.  FINAL JUDGMENT

78.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, New Jersey, and the Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.


Dated and entered this _11th_ day of _September,_ 2012.


_____
UNITED STATES DISTRICT JUDGE
District of New Jersey

FOR PLAINTIFF UNITED STATES OF AMERICA:


Dated: 6/27/12

ELLEN MAHAN
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice


Dated: 7/12/12

BRIAN G. DONOHUE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611


PAUL J. FISHMAN
United States Attorney
District of New Jersey

PETER O'MALLEY
Assistant United States Attorney
United States Attorney's Office
970 Broad Street, 7th Floor
Newark, NJ 07102

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Dated: _____ 5/29/12 _____          By: _Judith Enck_____
                                        JUDITH ENCK
                                        Regional Administrator
                                        U.S. Environmental Protection Agency
                                        Region 2
                                        290 Broadway
                                        New York, NY 10007-1866

Of Counsel:

EVANS STAMATAKY
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 2
290 Broadway
New York, NY 10007-1866

-35-

FOR PLAINTIFF STATE OF NEW JERSEY:

BOB MARTIN
Commissioner
New Jersey Department of Environmental
    Protection

Dated: July 10 2012    By: _____

WOLFGANG SKACEL
Assistant Commissioner
Compliance and Enforcement
401 East State Street
Mail Code: 401-04B
P.O. Box 420
Trenton, NJ 08625-0420

JEFFREY S. CHIESA
Attorney General of New Jersey

Dated: July 11, 2012    By: _____

SCOTT B. DUBIN
Deputy Attorney General
NJ Dept. of Law & Public Safety, Div. of Law
25 Market Street, P.O. Box 093
Trenton, NJ 08625-0093

FOR DEFENDANTS CHEVRON U.S.A. INC. and
CHEVRON U.S.A. INC. d/b/a CHEVRON PRODUCTS COMPANY:


Dated: June 6, 2012          By: _Michael W. Woody_

                             Name: _Michael W. Woody_
                             Title: _Assistant Secretary_
                             Address: _6001 Bollinger Canyon Road_
                                      _San Ramon, CA 94583_


Agent authorized to accept service on behalf of Chevron U.S.A. Inc. and Chevron U.S.A. Inc.
d/b/a Chevron Products Company:


                    Name:      _Trevor Black_
                    Address:   _6001 Bollinger Canyon Rd_
                               _San Ramon CA 94583_
              Telephone number: _925 842 9312_
              Facsimile Number:  _925 842 8595_

## APPENDIX A

### ENHANCED LEAK DETECTION AND REPAIR REQUIREMENTS

**Subsection A: Applicability of the ELP**

1.      The requirements of this ELP shall apply to all Covered Equipment/Covered Types of Equipment, except that the requirements of Paragraphs 2 and 29 shall apply to all equipment at the Facility that is regulated under any federal, state, or local leak detection and repair program.  The requirements of this ELP are in addition to, and not in lieu of, the requirements of any other LDAR regulation that may be applicable to a piece of Covered Equipment.  If there is a conflict between a federal, state, or local LDAR regulation and this ELP, the Defendants shall follow the more stringent of the requirements.  According to the Defendants, the Crude Unit at the Facility is not in operation, although the Terminal continues to operate.  If the Crude Unit restarts, the provisions in this Appendix A will relate to all Covered Equipment/Covered Types of Equipment at the Facility.  If the Crude Unit restarts after termination of the Consent Decree, the requirements of Appendix A survive such termination and Appendix A shall apply to the restarted Crude Unit for no less than three years from restart of the Crude Unit.  If the Crude Unit restarts before termination of the Consent Decree, the requirements of Appendix A will survive such termination for no less than three years from restart of the Crude Unit.  The Defendants will provide the United States and New Jersey 3 months advance of their intention to restart the Crude Unit.

**Subsection B: Facility-Wide LDAR Document**

2.      By no later than 3 months prior to restart of the Crude Unit, the Defendants shall develop a facility-wide document for the Facility that describes: (i) the facility-wide LDAR program (e.g., applicability of regulations to process units and/or specific equipment; leak-definitions; monitoring frequencies); (ii) a tracking program (e.g., Management of Change) that ensures that new pieces of equipment added to the Facility for any reason are integrated into the LDAR program and that pieces of equipment that are taken out of service are removed from the LDAR program; (iii) the roles and responsibilities of all employee and contractor personnel assigned to LDAR functions at the Facility; (iv) how the number of personnel dedicated to LDAR functions is sufficient to satisfy the requirements of the LDAR program; and (v) how the Facility plans to implement this ELP. The Defendants shall review this document on an annual basis and update it as needed by no later than December 31 of each year.

**Subsection C: Monitoring Frequency and Equipment**

3.      Upon restart of the Crude Unit, the Defendants shall comply with the following periodic monitoring frequencies, unless more frequent monitoring is required by federal, state, or local laws or regulations:

      a.      Valves – Quarterly for the first three quarters of monitoring, and thereafter semi-annually if the Defendants demonstrates, after approval by EPA (after consultation with New Jersey), a rate, for each quarter, below 1%

for leaks at the leak definition levels in Table 1 of Subsection D for such valves;

b.  Pumps – Monthly; except that monitoring shall not be required for pumps that are seal-less or that are equipped with a dual mechanical seal system that complies with the requirements of 40 C.F.R. § 63.163(e).

c.  Open-Ended Lines – Quarterly for the first three quarters of monitoring, and thereafter semi-annually if the Defendants demonstrate, after approval by EPA (after consultation with New Jersey), a rate, for each quarter, below 1% for leaks at the leak definition levels in Table 1 of Subsection D for such open-ended lines (monitoring will be done at the closure device; if the closure device is a valve (excluding sampling connection systems), monitoring will be done in the same manner as any other valve, but also shall include monitoring at the end of the valve or line that is open to the atmosphere).

4.  Valves that Have Been Replaced pursuant to Subsection G.  For valves that have been replaced, repacked, or improved pursuant to Subsection G (Valve Replacement and Improvement Program), the Defendants may monitor such equipment at the frequency required by the most stringent regulation that applies to the piece of equipment.  If any such piece of equipment is found to be leaking, the Defendants shall monitor that piece of equipment monthly until the piece of equipment shows no leaks at the leak definition levels in Table 1 of Subsection D for three consecutive months.  At that time, the Defendants may commence monitoring at the frequency for that type of equipment set forth in either Paragraph 3.

5.  Upon restart of the Crude Unit, for all Covered Equipment except for that in heavy liquid service, the Defendants shall comply with Method 21 in performing LDAR monitoring, using an instrument attached to a data logger (or an equivalent instrument) which directly electronically records the Screening Value detected at each piece of equipment, the date and time that each Screening Value is taken, and the identification numbers of the monitoring instrument and technician. The Defendants shall transfer this monitoring data to an electronic database within 5 days after the monitoring record is made.

### Subsection D: Leak Detection and Repair Action Levels

6.  Upon restart of the Crude Unit, , for all leaks detected at or above the leak definitions listed in Table 1 for the specific equipment type, the Defendants shall perform repairs in accordance with Paragraphs 8 - 11.

Table 1: Leak Definitions by Equipment Type

| Equipment Type | Lower Leak Definition (ppm) |
|---|---|
| Valves | 500 |
| Pumps | 500 |
| OELs (at the Closure Device) | 500 |

7.       Upon restart of the Crude Unit, for all Covered Equipment, at any time, including outside of periodic monitoring, that a leak is detected through audio, visual, or olfactory sensing, the Defendants shall repair the piece of Covered Equipment in accordance with all applicable regulations and with Paragraphs 8 - 11.

### Subsection E: Repairs

8.       By no later than 5 days after detecting a leak, the Defendants shall perform a first attempt at repair.  By no later than 30 days after detection, the Defendants shall perform a final attempt at repair or may place the piece of equipment on the Delay of Repair list provided that the Defendants have complied with all applicable regulations and with the requirements of Paragraphs 9 - 11 and 13.

9.       The Defendants shall perform Repair Verification Monitoring within 24 hours of detection of all repair attempts.

10.     a.       For leaking valves (other than control valves), when other repair attempts have proven ineffective and/or the Defendants are not able to remove the leaking valve from service, the Defendants shall use the drill-and-tap repair method prior to placing the leaking valve on the DOR list unless there is a major safety, mechanical, product quality, or environmental issue with repairing the valve using this method.  The Defendants shall document the reason(s) why any drill and tap repair was (were) not performed prior to placing any valve on the DOR list.  The Defendants shall attempt at least one drill-and-tap repair (with at least two attempts to inject sealant) before placing a valve on the DOR list.

b.       After conducting at least one drill-and-tap repair method noted in Paragraph 10.a above, as an alternative, the Defendants may designate the valve for replacement or repair using Certified Low-Leaking Valves or valves fitted with Low-Leaking Valve Packing Technology (if commercially available and installation is feasible) and place the valve on the DOR list;

11.     For each leak, the Defendants shall record the following information: the date of all repair attempts; the repair methods used during each repair attempt; the date, time and Screening Values for all remonitoring events; and, if applicable, the information required under Paragraphs 10 and 13 for Covered Equipment placed on the DOR list.

12. Nothing in Paragraphs 8 - 11 is intended to prevent the Defendants from taking a leaking piece of Covered Equipment out of service; provided, however, that prior to placing the leaking piece of Covered Equipment back in service, the Defendants must repair the leak or must comply with the requirements of Subsection F (Delay of Repair) to place the piece of Covered Equipment on the DOR list.

### Subsection F: **Delay of Repair**

13. Upon restart of the Crude Unit, for all Covered Equipment placed on the DOR list, the Defendants shall:

    a. Require sign-off (which can be accomplished by electronic signature or e-mail) from the relevant process unit supervisor or person of similar authority that the piece of Covered Equipment is technically infeasible to repair without a process unit shutdown;

    b. Undertake periodic monitoring, at the frequency required for other pieces of Covered Equipment of that type in the process unit, of the Covered Equipment placed on the DOR list; and

    c. Repair (or, if applicable under Subsection G, replace, repack, improve, or eliminate) the piece of Covered Equipment by the end of the next process unit shutdown or three years, whichever occurs first. The number of valves that can placed on the DOR list is limited to 0.5% (if not receiving Low Leak Technology), however, the limits for valves designated for repair or replacement with Certified Low-Leaking Valves or fitted with Certified Low-Leaking Valve Packing Technology (if commercially available and installation is feasible) is 2.0%

### Subsection G:**Valve Replacement and Improvement Program**

14. Upon restart of the Crude Unit, the Defendants shall implement the program set forth in Paragraphs 15 - 18 to replace and/or improve the emissions performance of the valves in light liquid service or gas vapor service in each Covered Process Unit and the Terminal.

15. Installing New Valves. Except as provided in Paragraph 17, the Defendants shall ensure that each new valve in light liquid service or gas vapor service that they install in each Covered Process Unit and the Terminal either is a Certified Low-Leaking valve or is fitted with Certified Low-Leaking Valve Packing Technology.

16. List of all Valves in the Covered Process Unit(s) and the Terminal. Upon restart of the Crude Unit, the Defendants shall submit to EPA a list of all valves in each Covered Process Unit and the Terminal, broken down by Covered Process Unit and the Terminal, that are in existence at that time.

17.   Commercial Unavailability of a Certified Low-Leaking Valve or Certified Low-Leaking Valve Packing Technology.  The Defendants shall not be required to utilize a Certified Low-Leaking Valve or Certified Low-Leaking Valve Packing Technology to replace or repack a valve if a Certified Low-Leaking Valve or Certified Low-Leaking Valve Packing Technology is commercially unavailable.  Prior to claiming this commercial unavailability exemption, the Defendants must contact no less than two vendors of valves or valve packing technology (as applicable) and obtain a written representation or equivalent documentation from each vendor that the particular valve or valve packing technology (as applicable) is commercially unavailable either as a certified low-leaking valve or with certified low-leaking valve packing technology.  In the Compliance Status Reports due under Section VI (Reporting) of this Consent Decree, the Defendants shall: (i) identify each valve for which they could not comply with the requirement to replace or repack the valve with a Certified Low-Leaking Valve or Certified Low-Leaking Valve Packing Technology; (ii) identify the vendors they contacted to determine the unavailability of such a valve or packing technology; and (iii) include the written representations or documentation that the Defendants secured from each vendor regarding the unavailability.

18.   Records of Certified Low-Leaking Valves and Certified Low-Leaking Valve Packing Technology.  Prior to installing any Certified Low-Leaking Valves or Certified Low-Leaking Valve Packing Technology, the Defendants shall secure from each manufacturer documentation that demonstrates that the proposed valve or packing technology meets the definition of "Certified Low-Leaking Valve" and/or "Certified Low-Leaking Valve Packing Technology."  The Defendants shall retain that documentation for the duration of this Consent Decree and make it available upon request.

19.   Valve Replacement/Improvement Report.  In each Compliance Status Report due under Section VI (Reporting) of this Decree, the Defendants shall include a separate section in the Report that: (i) describes the actions they took to comply with this Subsection G, including identifying each piece of equipment that triggered a requirement in Subsection G, the Screening Value for that piece of equipment, the type of action taken (i.e., replacement, repacking, improvement, or, elimination), and the date when the action was taken; (ii) identifies any required actions that were not taken and explains why; and (iii) identifies the schedule for any known, future replacements, repackings, improvements, or eliminations.

**Subsection H: Management of Change.**

20.   Management of Change.  Upon restart of the Crude Unit, the Defendants shall ensure that each piece of equipment added to or removed from the Facility for any reason is evaluated to determine if it is or was subject to LDAR requirements and shall integrate into or remove from the LDAR program all such pieces of equipment.  This evaluation shall be a part of the Defendants' facility-wide Management of Change protocol.  The Defendants shall incorporate the equipment changes identified in each Valve and Connector Replacement and Improvement Report into its Management of Change protocol.

**Subsection I:   Training**

21.   Upon restart of the Crude Unit, the Defendants shall have ensured that all employees and contractors responsible for LDAR monitoring, maintenance of LDAR equipment, LDAR repairs, and/or any other duties generated by the LDAR program have completed training on all aspects of LDAR that

- 5 -

are relevant to the person's duties. By that same time, the Defendants shall develop a training protocol to ensure that refresher training is performed once per calendar year and that new personnel are sufficiently trained prior to any involvement in the LDAR program.

### Subsection J:   Quality Assurance ("QA")/Quality Control ("QC")

22.     Daily Certification by Monitoring Technicians.  Commencing by no later than three months after the restart of the Crude Unit, on each day that monitoring occurs, at the end of such monitoring, the Defendants shall ensure that each monitoring technician certifies that the data collected accurately represents the monitoring performed for that day by requiring the monitoring technician to sign a form by hand or electronically that includes the following certification:

> On [insert date], I reviewed the monitoring data that I collected today and that to the best of my knowledge and belief, the data accurately represents the monitoring that I performed today.

23.     Commencing by no later than the first full calendar quarter after the restart of the Crude Unit, at unannounced times, an LDAR-trained employee or contractor of the Defendants, who does not serve on a routine basis as an LDAR monitoring technician, shall undertake the following no less than once per calendar quarter:

   i.     Review Management of Change (Subsection H) documentation for the previous calendar quarter, and conduct process unit walk-throughs to determine whether all pieces of Equipment identified in the previous calendar quarter's Management of Change documentation as being subject to the LDAR program are included in the LDAR database and properly targeted;

   ii.    Verify that equipment was monitored at the appropriate frequency;

   iii.   Verify that proper documentation and sign-offs have been recorded for all equipment placed on the DOR list;

   iv.    Ensure that repairs have been performed in the required periods;

   v.     Review monitoring data, and equipment counts (e.g., number of pieces of equipment monitored per day) for feasibility and unusual trends;

   vi.    Verify that proper calibration records and monitoring instrument maintenance information are maintained;

   vii.   Verify that other LDAR program records are maintained as required; and

   viii.  Observe each LDAR monitoring technician in the field to ensure monitoring is being conducted as required.

The Defendants shall correct any deficiencies detected or observed as soon as practicable. The Defendants shall maintain a log that (i) records the date and time that the reviews, verifications, and observations required by this Paragraph were undertaken; and (ii) describes the nature and timing of any corrective actions taken.

### Subsection K: <u>LDAR Audits and Corrective Action</u>

24.     The Defendants shall retain a third party with experience in conducting LDAR audits to conduct an LDAR audit at the Facility once every two years pursuant to the schedule in Paragraph 25 and the requirements of Paragraph 26. To the extent that, at any time prior to termination of this Consent Decree, the Defendants use or start to use a third party to undertake its routine LDAR monitoring, the Defendants shall not use the same third party to undertake its LDAR audits.

25.     The Defendants shall ensure that an LDAR audit at the Facility is conducted every two years in accordance with the following schedule: for the first LDAR audit, the LDAR Audit Commencement Date shall be no later than six months after restart of the Crude Unit; for each subsequent LDAR audit, the LDAR Audit Completion Date shall occur within the same calendar quarter that the first LDAR Audit Completion Date occurred.

26.     For each Covered Process Unit and the Terminal, each LDAR audit shall include but not be limited to reviewing compliance with all applicable LDAR regulations and reviewing and/or verifying the same items that are required to be reviewed and/or verified in Subparagraphs 26.a. - 26.c. In addition, each LDAR audit shall include "comparative monitoring," as follows:

a.     <u>Calculating a Comparative Monitoring Audit Leak Percentage.</u>  Each Covered Type of Equipment shall be monitored in order to calculate a leak percentage, broken down by equipment type (i.e., valves, pumps, and OELCDs). The monitoring that takes place during the audit shall be called "comparative monitoring" and the leak percentages derived from the comparative: monitoring shall be called the "Comparative Monitoring Audit Leak Percentages."

b.     <u>Calculating the Historic, Average Leak Percentage from Prior Periodic Monitoring Events.</u>  For each Covered Process Unit and the Terminal that is subject to comparative monitoring in any given year, the historic, average leak percentage from prior periodic monitoring events, broken down by equipment type (i.e., valves, pumps, and OELCDs) shall be calculated. The following number of complete monitoring periods immediately preceding the comparative monitoring shall be used for this purpose:  valves - 4 periods; pumps - 12 periods; and OELCDs - 4 periods.

c.     <u>Calculating the Comparative Monitoring Leak Ratio.</u>  For each Covered Process Unit and the Terminal, the ratio of the Comparative Monitoring Audit Leak Percentage from Paragraph 26.a. to the historic, average leak percentage from Paragraph 26.b. shall be calculated. This ratio shall be called the "Comparative Monitoring Leak Ratio." If a calculated ratio yields an infinite result, it shall be assumed that one leaking piece of equipment was found in the process unit through routine monitoring during the 12 - month period before the comparative monitoring, and the ratio shall be recalculated.

In only the first LDAR audit, the Defendants shall not be required to undertake comparative monitoring on OELCDs or calculate a Comparative Monitoring Leak Ratio for OELCDs because of the

unavailability of historic, average leak percentages for OELCDs. LDAR audits after the first audit shall include reviewing the Facility's compliance with this ELP.

27. **When More Frequent Periodic Monitoring is Required.** If a Comparative Monitoring Audit Leak Percentage calculated pursuant to Paragraph 26.a. triggers a more frequent monitoring schedule under any applicable federal, state, or local law or regulation than the frequencies listed in the applicable Paragraph in Subsection C – that is, either Paragraph 3 or 4 – for the equipment type, the Defendants shall monitor the affected type of equipment at the greater frequency unless and until less frequent monitoring is again allowed under the specific federal, state, or local law or regulation. At no time may the Defendants monitor at intervals less frequently than those listed in the applicable Paragraph in Subsection C.

28. **Corrective Action Plan ("CAP").**

a. **Requirements of a CAP.** By no later than 30 days after each LDAR Audit Completion Date, the Defendants shall develop a preliminary Corrective Action Plan if the results of an LDAR audit identify any deficiencies or if the Comparative Monitoring Leak Ratio calculated pursuant to Paragraph 26.c. is 3.0 or higher. The preliminary CAP shall describe the actions that the Defendants have taken or shall take to correct the deficiencies and/or the systemic causes of a Comparative Monitoring Leak Ratio that is 3.0 or higher. The Defendants shall include a schedule by which actions that have not yet been completed shall be completed. The Defendants shall complete each corrective action item as expeditiously as possible with the goal of completing each action within 90 days after the LDAR Audit Completion date. If any action is not completed or not expected to be completed within 90 days after the LDAR Audit Completion Date, the Defendants shall explain the reasons and propose a schedule for completion as expeditiously as practicable in the final CAP to be submitted under Subparagraph 28.b.

b. **Submission of the Final CAP to EPA.** By no later than 120 days after the LDAR Audit Completion Date, the Defendants shall submit the final CAP to EPA, together with a certification of the completion of each item of corrective action. If any action is not completed within 90 days after the LDAR Audit Completion Date, the Defendants shall explain the reasons, together with a proposed schedule for completion as expeditiously as practicable. The Defendants shall submit a supplemental certification of completion by no later than 30 days after completing all actions.

c. **EPA Review/Comment on CAP.** EPA may submit comments on the CAP. Except for good cause, EPA may not request the Defendants to modify any action within the CAP that already has been completed at the time of EPA's comments. Within 30 days of receipt of any comments from EPA, the Defendants shall submit, a reply. Disputes arising with respect to any aspect of a CAP shall be resolved in accordance with the dispute resolution provisions of this Decree.

**Subsection L: Certification of Compliance**

29. Within 180 days after the initial LDAR Audit Completion Date, the Defendants shall certify to EPA that: (i) the Facility is in compliance with all applicable LDAR regulations and this ELP; (ii) the Defendants have completed all corrective actions, if applicable, or are in the process of completing all corrective actions pursuant to a CAP; and, (iii) all equipment at the Facility that is

- 8 -

regulated under a federal, state, or local leak detection and repair program has been identified and included in the Facility's LDAR program. To the extent that The Defendants cannot make the certification in all respects, the Defendants shall specifically identify any deviations from Item (i) - (iii).

### Subsection M: Recordkeeping

30.     The Defendants shall keep all original records, including copies of all LDAR audits, to document compliance with the requirements of this ELP for at least two years after termination of this Decree. Upon request by EPA, the Defendants shall make all such documents available to EPA and shall provide, in their original electronic format, all LDAR monitoring data generated during the life of this Consent Decree.

### Subsection N: Reporting

31.     Compliance Status Reports. On the dates and for the time periods set forth in Paragraph 32, the Defendants shall submit to EPA, in the manner set forth in Section VXIV (Notices), the following information:

        a.    The number of personnel assigned to LDAR functions at the Facility and the percentage of time each person dedicated to performing his/her LDAR functions;

        b.    An identification and description of any non-compliance with the requirements of Section V (Compliance Requirements);

        c.    An identification of any problems encountered in complying with the requirements of Section V (Compliance Requirements);

        d.    The information required by Paragraph 19 of Subsection G;

        e.    A description of the trainings done in accordance with this Consent Decree;

        f.    Any deviations identified in the QA/QC performed under Subsection J hereof, as well as any corrective actions taken under that Subsection;

        g.    A summary of LDAR audit results including specifically identifying all deficiencies; and

        h.    The status of all actions under any CAP that was submitted during the reporting period.

32.     Due Dates. The first compliance status report shall be due thirty-one days after the first full half-year after the restart of the Crude Unit (i.e., either: (i) January 31 of the year after restart if the restart is between January 1 and June 30 of the preceding year; or (ii) July 31 of the year after the restart, if the restart is between July 1 and December 31). The initial report shall cover the period between the date of restart of the Crude Unit and the first full half-year thereafter (a "half-year" runs between January 1 and

- 9 -

June 30 and between July 1 and December 31). Each subsequent report will be due on the same date in the following year and shall cover the prior two half-years (i.e., either January 1 to December 31 or July 1 to June 30).

33.     Each report submitted under this Consent Decree shall be signed, by hand or electronically, by the plant manager, a corporate official responsible for environmental management and compliance, or a corporate official responsible for plant engineering management, and shall include the following certification:

> I certify under penalty of law that I have examined and am familiar with the information in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gather, evaluate, and present the information contained therein. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.